UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| AMANDA GWYN DANIEL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-04493-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 21 |

Plaintiff Amanda Gwyn Daniel seeks judicial review of an Administrative Law Judge ("ALJ") decision denying her application for benefits under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 1-7). The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5, 11) and both parties have moved for summary judgment (dkts. 20, 21). For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff filed an application for Title XVI disability benefits on April 22, 2014, alleging a disability onset date of October 1, 2007. (AR 224-235). Plaintiff's application was denied initially on July 7, 2014. (AR 113-17). Plaintiff filed a request for hearing with an ALJ and a hearing was held on November 17, 2015. (AR 61-88). At the hearing, Plaintiff amended her alleged onset date to April 22, 2014. (AR 21). The ALJ issued an unfavorable decision on February 5, 2016. (AR 16-32). Plaintiff requested review by the Appeals Council on April 1, 2016. (AR 209). The request for review was denied on June 8, 2017. (AR 1-7).

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step evaluation

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

2

1  process. (AR 16-32).

2     At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date she became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 22, 2014, her alleged onset date. (AR 23).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: affective disorder, anxiety disorder, learning disorder, and attention deficit hyperactivity disorder. (AR 23).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful, the ALJ proceeds to Step Four. *See id.* § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 24).

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See id.* § 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple, routine, and repetitive tasks not at production pace, in a work setting with few changes. She is also limited to making simple, work-related decisions; brief, superficial interactions with coworkers, and can never interact with the public. (AR 26).

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. *See* 20 CFR § 416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including assembler, cleaner, and packager. (AR 31). Thus, the ALJ found Plaintiff was not disabled since April 22, 2014, the date the application was filed. (AR 31).

## DISCUSSION

### Listing Analysis at Step Three

Plaintiff contends that the ALJ's listing analysis at Step Three of the five-step evaluation is not supported by substantial evidence. At Step Three, the ALJ assessed Organic Mental Disorders [Listing 12.02], Affective Disorders [Listing 12.04], Intellectual Disability [Listing 12.05], and Personality Disorders [Listing 12.06] as listing level impairments. (AR 24). The ALJ explained that "[t]o satisfy the "paragraph B" criteria ("paragraph D" criterial of listing 12.05), the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (AR 24). The ALJ found Plaintiff to have mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (AR 24-25).

Plaintiff argues that in assessing her mental impairments, the ALJ failed to adequately consider the opinion of treating physician Jacqueline Amato, M.D. Dr. Amato is a board certified psychiatrist. From the period of May 8, 2012, through October 12, 2015, Dr. Amato met with Plaintiff approximately twenty-one times. (AR 361-383, 385-386, 388-389, 416-439). During the course of treatment, Dr. Amato diagnosed Plaintiff with Bipolar Affective Disorder, Generalized Anxiety Disorder, Attention Deficit Hyperactivity Disorder and Nonverbal Learning Disability. (AR 362). Plaintiff stresses that Dr. Amato found marked restrictions in the areas of activities of daily living, in maintaining social functioning and in maintaining concentration, persistence, or pace, and concludes that the opinion of Dr. Amato meets the requirements to support a listing.

4

(AR 442).

The ALJ did not discuss Dr. Amato's opinion in her analysis at Step Three. The ALJ did, however, state as follows in regard to the RFC analysis at Step Four:

> Dr. Amato submitted two statements, in June 2014 and November 2015, representing that the claimant was unable to work due to attention deficit hyperactivity disorder and a non-verbal learning disability diagnosed in childhood (Exs. 5F; 11F/3). Her prognosis was that the claimant's condition is chronic, unremitting, and worsens with stress. (Id). She opined that in a workplace environment, the claimant would be off task ten or more minutes out of each hour and miss work or leave work early two or more days per month. (Id.) Dr. Amato also opined the claimant would have marked difficulty in: understanding and remembering very short and simple instructions; maintaining attention and concentration; performing activities within a schedule, maintaining regular attendance and being punctual; working in coordination with or proximity to others without being unduly distracted by them, completing a normal work day without interruptions caused by mental symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods (Id.). She also opined that the claimant cannot manage benefits in her own best interest (Ex. 5F/3)[.]
>
> Although a treating physician's opinion is generally given great weight, the undersigned is unable to give the opinions of Dr. Amato more than little weight. The limitations she imposed are not generally supported by the medical evidence of record, or even by her own treatment records. For example, Dr. Amato opined that the claimant has marked limitations in maintaining attention and concentration, yet she noted in May 2013 and October 2015 treatment notes that the claimant had no issues with attention span and her thought process was linear (Exs. 4F/12; 10F/25). She asserted that the claimant has poor social skills and the claimant's condition is chronic and unremitting, yet she noted repeatedly in her treatment notes that the claimant was stable on medication, appeared cooperative, and presented with average attention span and intact memory (Exs. 4F; 6F). Thus, Dr. Amato's opinions were given limited weight.

(AR 28).

In *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir. 1990), the ALJ made a five page summary of the record, stating the information from each of the doctors and summarizing the claimant's testimony. The ALJ found that the record substantiated some of the claimant's complaints, but the ALJ did not explain what evidence supported his conclusion that the claimant's impairments did not meet or exceed the listing of impairments. *Id.* On appeal, the claimant contended that the ALJ erred in failing to discuss why he did not satisfy the listing of impairments.

The Ninth Circuit rejected this contention, holding that it was "unnecessary to require the

Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Id.* It found that the ALJ's four page "evaluation of the evidence" met the requirement of a statement of the "foundations on which the ultimate factual conclusions are based." *Id.* at 1201. Based on this holding by the Ninth Circuit, the court finds that the ALJ's explanation of her rejection of Dr. Amato's opinions, although stated in the context of her finding regarding Plaintiff's RFC, applies equally to the ALJ's Step Three finding.

Opinions from treating physicians generally receive greater weight than non-examining sources, 20 C.F.R. § 416.927(c)(2), but not if the opinions are conclusory, unsupported, or inconsistent with the evidence of record. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). Plaintiff argues that the findings of Dr. Amato are consistent with the medical record as a whole, citing the opinions of Licensed Educational Psychologist Jan Paulus, MS, MA, (AR 392-399); treating counselor Susan K. Isaac, M.A. (AR 402-405); Ted R. Ruggles, PhD., (AR 408-413); Mario Petersen, M.D. (AR 316); and Kathi Hoffer, Ph.D. (AR 318). The ALJ addressed these mental health assessments, noting that they were made more than ten years ago and referencing them "solely for consideration in regard to longitudinal history." (AR 28). After reviewing the assessments, the ALJ found:

> The undersigned gives these opinions little weight, as they are remote in time, made when the claimant was a student. The reports provide little probative value of the claimant's functioning since she filed her Title XVI application in April 2014. In addition, the assessments made by the child development clinic, Dr. Ruggles, and Ms. Paulus were based upon only one examination of the claimant. Moreover, the claimant's hearing testimony and medical records indicate the claimant's conditions have improved with treatment, and she has developed life skills such as cooking and the ability to follow written instructions (Exs. 4E; 5E).

(AR 29). The court finds that any agreement between Dr. Amato's medical opinion and those expressed in these ten-year-old medical records is insufficient to establish that Dr. Amato's opinions were consistent with the record as a whole. As set forth in the language from the ALJ's decision quoted above, Dr. Amato's opinions were inconsistent with her own treatment records.

Further, Dr. Amato's opinions were also inconsistent with the statements and testimony of Plaintiff herself.

In regard to activities of daily living, Plaintiff testified that she could complete meals, wash dishes, clean, do laundry, make her bed, shower, shop online, care for her cat, and assist with the care of her nieces. (AR 24, 77, 256-58, 332, 335, 338, 342, 357, 432, 436). As the State agency doctors opined, this evidence was entirely consistent with the ability to perform activities of daily living independently, appropriately, effectively, and on a sustained basis with only slight limitations. (AR 97, 109). 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00(F)(2)(b) (defining mild limitation).

Although Plaintiff argues that the ALJ misrepresented Plaintiff's testimony, the court finds that the ALJ accurately cited the evidence. Plaintiff's presentation of an alternative view of the evidence is not a basis to overturn the ALJ, whose conclusions were at least rational. *See Burch*, 400 F.3d at 679 (the Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation). Further, none of the cases that Plaintiff cites are controlling because they pertain to an ALJ's evaluation of a claimant's RFC, which is a different analysis than at Step Three. The RFC is specific to a work environment. 20 C.F.R. § 416.945(a) (RFC is "the most [an individual] can do despite [his or her limitations]" and considers the "work setting"). The evaluation at issue here is a listing analysis made in Step Three.

The ALJ reasonably determined that Plaintiff had only moderate difficulties in social functioning. (AR 24-25). Despite her testimony and statements that she had difficulty being alone and getting along with family, Plaintiff was still able to go to the movies, shop, visit her grandmother in a nursing home, eat at restaurants with her family, walk outside for exercise, and communicate with others via text message. (AR 24-25, 256, 258-59, 271, 416). She spent nine days in a crowded amusement park despite her complaints of anxiety and panic attacks. (AR 25, 82). Again, Plaintiff simply advances an alternative interpretation of the evidence. *See Burch*, 400

F.3d at 679.

Finally, the ALJ reasonably found that Plaintiff had moderate impairment in concentration, persistence, and pace. (AR 25). Dr. Amato repeatedly noted average attention span, Plaintiff could cook meals that took several hours to prepare, she read often, and could play board games as well as watch a few hours of television daily. (AR 25, 28, 257, 259, 271, 361, 363, 365, 367, 369, 371, 373, 377, 379, 382, 388, 416, 426-28, 432, 434, 436, 438). Plaintiff's disagreement with the ALJ's weighing of the evidence is not a basis to overturn the ALJ's rational interpretation. *See Thomas*, 278 F.3d at 954.

In summary, the ALJ specifically analyzed the record evidence on each broad area of functioning to determine that Plaintiff did not meet her burden to prove she had a presumptively disabling mental impairment. The court rejects Plaintiff's argument that the ALJ did not adequately consider Dr. Amato's opinion in regard to Step Three, finding that the ALJ correctly found that it was unsupported by the medical evidence and her own treatment records. *See Batson*, 359 F.3d at 1105. The court has considered all of Plaintiff's arguments and finds that the ALJ's determination at Step Three was based on clear and convincing reasons supported by substantial evidence and must be upheld by this court. *See Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

**Residual Functional Capacity**

Plaintiff contends that the ALJ's finding in regard to Plaintiff's RFC at Step Four is not based on substantial evidence. Plaintiff argues that the ALJ failed to give adequate reasons for giving only little weight to the opinions of treating physician Dr. Amato. Noting that the ALJ also gave little weight to the other examining physicians, Plaintiff argues that the ALJ erroneously relied only on the opinions of the non-treating, non-examining State agency reviewing physicians to contradict the opinion of Dr. Amato in determining Plaintiff's RFC. *See Lester*, 81 F.3d at 831 (The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

8

justifies the rejection of the opinion of either an examining physician or a treating physician.).

The court rejects Plaintiff's reasoning. As set forth in the portion of the ALJ's decision quoted above, the ALJ gave Dr. Amato's opinions little weight because "the limitations she imposed are not generally supported by the medical evidence of record, or even by her own treatment records." (AR 28). The ALJ did not reject Dr. Amato's opinions based on the opinions of the non-examining physicians. Indeed, the ALJ gave only partial weight to the opinions of the State agency psychological consultants.

Plaintiff further argues that by giving no more than partial weight to any of the medical opinions, the ALJ rejected all the medical opinions and substituted her own opinion for those of the medical experts, citing *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("ALJ's may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis.") Again, the court rejects Plaintiff's analysis. The ALJ gave little weight to the opinion of Dr. Amato, little weight to the ten-year-old mental health assessments, and partial weight to the opinions of the State agency consultants. In regard to the State agency consultants, the ALJ stated in part:

> Their assessments generally are consistent with the residual functional capacity, medical evidence of record, which as stated above document[s] improvement with treatment, hearing testimony, and function reports are given great weight. For example, the record indicates the claimant would be able to perform simple, repetitive tasks in a quiet setting that limits her contact with co-workers due to the anxiety that such contact could provoke. However, the longitudinal records support more limits.

(AR 28). Thus, the ALJ did not wholly reject the opinions of the State agency consultants.

The ALJ also gave partial weight to the third party function report made by Plaintiff's mother, explaining in part:

> The opinion of a layperson is less persuasive on those same issues than that of medical professionals as relied on herein. Nonetheless, Ms. Daniel's [sic] reported that claimant performs many activities such as using the computer, cooking, board games, reading often, and going out for movies and dinner. Ms. Daniel's opinion is given partial weight with respect to the claimant's ability to carry out activities of daily living and follow written instructions, as this is consistent with claimant's testimony and function report, as well as the medical evidence.

9

(AR 30).

Based on the above, the court finds, contrary to Plaintiff's argument, that the ALJ did not reject all the medical opinions and improperly substitute her opinion for that of the medical professionals. The court notes that the ALJ gave Dr. Amato's opinions "limited" weight and the ten-year-old opinions of the mental health professionals "little" weight, referencing the later only in regard to longitudinal history. This is not the equivalent of totally rejecting the opinions. Additionally, as discussed above, the ALJ provided sound reasons for the weight she gave them. Further, the ALJ gave partial weight to the State agency opinions, and to the third party function report, again stating clearly why she did so. The court thus finds that in reaching her determination, the ALJ relied to the degree indicated on each of the four sources of information regarding Plaintiff's RFC. The ALJ provided detailed explanations as to what extent she relied on each of these sources, and her RFC determination follows reasonably from these explanations. There is no indication that the ALJ improperly substituted her own judgment for that of the medical professionals in reaching the determination. The court has considered all of Plaintiff's arguments and concludes that the ALJ's RFC determination is based on substantial evidence.

**New Evidence Submitted to Appeals Council**

After the ALJ issued her decision on February 5, 2016, new evidence was submitted to the Appeals Council. Some of this evidence consists of records which predate the decision. Other items of evidence are dated immediately after the decision date.

The new evidence which pre-dates the ALJ decision is as follows: (1) records of treating physician Jacqueline Amato, M.D., dated November 14, 2015, through December 12, 2015 (AR 37-40); (2) records of the Del Norte Unified School District dated April 28, 1999, through November 25, 2002 (AR 41-59); and (3) records of Marie Witt, Ph.D., dated February 16, 1996 (AR 60).

The Appeals Council found that this new evidence did not show "a reasonable probability that it would change the outcome of the decision." For this reason, the Appeals Council "did not consider and exhibit this evidence." (AR 2).

The new evidence submitted to the Appeals Council which post-dates the ALJ decision is

from Jacqueline Amato, M.D., dated February 13, 2016. (AR 15-17). The Appeals Council found that this evidence did not relate to the period at issue and therefore does not affect the decision about whether Plaintiff was disabled prior to the February 5, 2016, date of the ALJ decision. (AR 2).

On February 13, 2016, Dr. Amato wrote:

> The patient has not been employed the entire time I have treated her. She has not been capable of any type of employment in my opinion. The patient has cognitive limitations and the inability to perform many of the activities of daily living, such as banking, shopping, cooking, etc. ¶ The patient does decompensate with increased stress and anxiety. She has not tolerated this well in any way. ¶ The patient is taking six psychotropic medications to be able to function daily.

(AR 15).

Plaintiff contends that all of this evidence relates to her condition as of the date of the ALJ decision, supports the evidence in the record, and confirms the diagnoses and functional limitations as determined by Plaintiff's treating physicians. Plaintiff argues that this evidence was therefore improperly rejected by the Appeals Council.

The Ninth Circuit held in *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012), that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record which the district court must consider when reviewing the Commissioner's final decision for substantial evidence. The court must agree with Defendant that the Appeals Council properly declined to consider the new evidence submitted by Plaintiff on the ground that the evidence did not have a reasonable probability of changing the outcome of the decision. (AR 2, 37-60). The records of the Del Norte Unified School District dated 1999 through 2002, and the records of Marie Witt, Ph.D., dated 1996, long predate Plaintiff's alleged disability onset date of April 2014, and it is unlikely they would have significantly impacted the ALJ's decision.

Dr. Amato's treatment notes from November 14, 2015, December 12, 2015, and February 13, 2016 did not have a reasonable probability of changing the outcome of the ALJ's decision either. (AR 15-18, 37-40). In November 2015, Plaintiff reported stress from her sister's

11

admission to rehab, and she stopped taking one of her medications with adverse results. (AR 39). However, her mental status was largely unchanged: she was still cooperative with linear thought process and associations, and she was alert and oriented. (AR 39-40). She felt some suicidal ideation without plan or intent, but that resolved by the December appointment after a medication change. "She is feeling less depressed with the increased dose of Latuda. She is no longer having any type of suicidal thoughts." (AR 37). In December, Dr. Amato assessed Plaintiff as "stable on medication" after observing that Plaintiff was still cooperative, had linear thought process and associations, and was alert and oriented. (AR 37).

In addition, Dr. Amato's February 13, 2016 treatment note (eight days after the ALJ's decision) did not pertain to the time period that the ALJ adjudicated, except for the statement that Plaintiff had not been employed "the entire time" Dr. Amato had known her. This was not new information—Plaintiff's lack of employment history had already been acknowledged by the ALJ. (AR 30). Considering the record as a whole, the new evidence that Plaintiff submitted does not change the fact that substantial evidence supports the ALJ's findings.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is hereby DENIED and Defendant's motion for summary judgment is hereby GRANTED. The Clerk is directed to close this case.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: January 22, 2019

ROBERT M. ILLMAN
United States Magistrate Judge